UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARDENER JAMES DOANE,<br><br>      Plaintiff,<br><br>  v.<br><br>FIRST FRANKLIN FINANCIAL,<br>et al.,<br><br>      Defendants. | No. 2:11-cv-02130-MCE-GGH<br><br><br><br>MEMORANDUM AND ORDER |

----oo0oo----

Before the Court are Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 13) ("FAC"),[1] Motion to Strike (ECF No. 14) ("MTS"), and Request for Judicial Notice (ECF No. 13, Att. 1) ("RJN").[2]

///

---

[1] On August 8, 2011, Defendants filed motions to dismiss and strike Plaintiff's original complaint (see ECF Nos. 1, 6 and 7). Rather than opposing these motions, on September 9, 2011, Plaintiff filed the amended complaint (although it does not, on its face, indicate that it has been amended) that is the subject of the present motions (see ECF No. 8).

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

1

For the reasons that follow, Defendants' Motion to Dismiss is GRANTED, the Request for Judicial Notice is GRANTED and the Motion to Strike is DENIED as MOOT.

## BACKGROUND[3]

In March 2007, Plaintiff Gardener James Doane ("Plaintiff" or "Doane"), using Defendant Summit Funding ("Summit") as his broker, obtained two mortgage loans from Defendant First Franklin Financial Corp. ("First Franklin") for his property located at 8333 Raffia Court, Antelope, CA 95843. (FAC, ¶¶ 67-68, see also ECF No. 13, Att. 1 (Request for Judicial Notice),[4] Exs. A-B). The principal amount of the first mortgage was $300,000 and the second mortgage was for $75,000. (FAC, ¶ 68, RJN, Exs., A-B.)

///
///

---

[3] To the extent possible, the following facts are taken from Plaintiff's FAC (ECF No. 1). For the purposes of this Motion, the Court accepts Plaintiff's facts as true and makes all inferences in the light most favorable to Plaintiff.

[4] Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"), Defendants request the Court take judicial notice of several documents. (RJN, ECF No. 13, Att. 1.) Specifically, Defendants ask the Court to take judicial notice of: (1) two Deeds of Trust executed by Plaintiff and First Franklin (RJN, Exs. A and B); (2) the February 4, 2009, Notice of Default (Id., Ex. C); (3) the May 7, 2009, Notice of Trustee's Sale (Id., Ex D); and (4) the Trustee's Deed Upon Sale recorded on April 28, 2010 (Id. at Ex. E). Defendants' requests are unopposed and are the proper subject of judicial notice. See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record). Accordingly, Defendants' Request for Judicial Notice (ECF No. 13, Att. 1.) is granted.

2

The loans were funded by First Franklin and Doane signed promissory notes and executed deeds of trust in favor of First Franklin. (FAC, ¶¶ 68-69.) The Deed of Trust names Defendant Mortgage Electronic Registration System ("MERS") as the nominee beneficiary under the loan.[5] (See FAC, ¶ 79; RJN, Ex. A at 1; Ex. 2 at 1.) Doane's loan was allegedly securitized (FAC, ¶ 72), and Defendant U.S. Bank, N.A., is alleged to be the trustee for the securitization pool that currently contains Doane's loans pursuant to a pooling and servicing agreement. (FAC, ¶ 74.)

Although Doane's FAC does not make this clear, he apparently defaulted on the loan in 2009 and his house was sold pursuant to a trustee's sale in 2010. Specifically, on February 4, 2009, a Notice of Default was recorded with the Sacramento County Recorder on the $300,000 loan. (RJN, Ex. C.) Then, on May 7, 2009, a Notice of Sale was recorded. (RJN, Ex. C.) Doane's property was thereafter sold in a trustee's sale and a trustee's deed upon sale was recorded on April 28, 2010. (RJN, Ex. D.) On June 3, 2011, Doane filed his complaint in state court, (see ECF No. 1, Ex. A), and Defendants thereafter removed the case to this Court on the basis of federal question jurisdiction stemming from Doane's federal-law causes of action. (Id.) On September 26, 2011, after Doane amended his complaint, Defendants filed the present motions to dismiss and to strike.

///
///

---

[5] Although Doane acknowledges MERS is the designated nominee beneficiary, he also contends that because of unspecified "bogus and fraudulent asignments," "MERS never had an interest in the deed of trust or the note." (FAC, ¶¶ 79-82.)

3

Doane's forty-four page FAC raises factual allegations in both his "Factual Allegations" section, as well as in each separate cause of action, and he appears to be incorporating previously raised factual allegations in each claim without clearly identifying the facts upon which he relies, thereby making it difficult to ascertain what, exactly, he is alleging and relying on for any given claim.[6]  To the extent the Court understands his claims, it appears that Doane is generally alleging that:

1. The loan documents he signed do not reflect the agreement of the parties due to unspecified mistakes by the parties, or due to unspecified fraud on every Defendants' part (FAC, ¶¶ 155-56);

2. All Defendants engaged in "bogus and fraudulent" assignments and transfers of Doane's loan (Id. at ¶¶ 75-80);

3. He was orally promised (by whom is unspecified), but never received, a permanent home loan through the HAMP (Id. at ¶¶ 116, 159-63, 166-69, 175, 181-88);

4. All Defendants "manufactured" unspecified documents (Id. at ¶¶ 131-32, 140);

5. All Defendants intentionally, illegally, and improperly securitized his loan and did so by means of unspecified misrepresentations and/or omissions (see, e.g., id. at ¶¶ 7-18, 66-85, 189-212);

///

---

[6] Furthermore, numerous paragraphs of the FAC appear to be boilerplate allegations regarding matters such as (1) the process of securitizing mortgage loans across the nation and allegations of problems with that process (See, e.g., FAC, ¶¶ 19-65 (securitization); and (2) the implementation of the Home Affordable Modification Program ("HAMP") process and problems that have allegedly occurred with its implementation (see id. at ¶¶ 86-116 (HAMP)).  Although Doane appears to be alleging the same type of issues that occurred elsewhere occurred here, he fails to plead facts that tie the problems he alleges occurred elsewhere to the parties and transactions at issue here.

4

1    6.   Unspecified Defendants represented to him that no
         foreclosure sale would occur, but then conducted
2        the foreclosure anyway. (Id. at ¶¶ 146-49.)

3    7.   All Defendants committed mail fraud by mailing him
         the notices of default, notice of trustee's sale,
4        and documents related to the loan modification
         (Id. at ¶¶ 218-19).

As a result of Defendants' actions, Doane contends that he "has no idea who, if anyone, to whom [he] owe[s] money under the note and no idea who, if anyone, holds an enforceable security interest." (Id. at ¶ 85) (altered for clarity.)  He contends that the loan was an illegal security, based on an unlawful object, so lacks consideration and is void or voidable. (Id. at ¶ 212.)  He claims the contract must be reformed to reflect the (unspecified) intent of the parties. (Id. at ¶ 157.)  He also asserts that the trustee's sale constituted a wrongful foreclosure because none of the Defendants had a lawful interest in the property at issue. (Id. ¶ 1.)  He also claims Defendants' actions caused him extreme emotional distress. (Id. at ¶¶ 240, 243, 247-48).

Doane asserts ten causes of action; two federal law claims and eight state or common law claims.  His first federal cause of action, his seventh listed claim, is an intentional misrepresentation claim for violations of the Securities Exchange Act of 1934 ("Securities Exchange Act") and U.S. Tax Code, in which he essentially asserts that the note was securitized by means of a pooling agreement, and that the parties involved in the securitization intentionally did not follow the proper securitization process to qualify as Real Estate Mortgage Investment Conduit ("REMIC"). (Id. at ¶¶ 189-212.)

5

Doane's second federal cause of action, his eighth claim, is for Civil Racketeer Influenced and Corrupt Organization Act ("RICO") violations. (Id. at ¶¶ 213-33.) Doane's remaining causes of action are for: (1) declaratory relief (Id. at ¶¶ 123-44); (2) detrimental reliance (Id. at ¶¶ 145-51); (3) reformation of contract (Id. at ¶¶ 152-57); (4) promissory estoppel (Id. at ¶¶ 158-63); (5) misrepresentation (Id. at ¶¶ 164-72); (6) unfair business practices under California's Bus. & Prof. Code § 17200, et seq. (Id. at ¶¶ 173-88); (7) intentional infliction of emotional distress (Id. at ¶¶ 234-43); and (8) negligent infliction of emotional distress (Id. at ¶¶ 234-43).

Doane's prayer for relief seeks: (1) a declaratory judgment that the contract was breached and ordering Defendants to offer him a permanent loan modification; (2) specific performance of the contract; (3) punitive damages; (4) a determination the original contract is void and unenforceable; (5) attorney's fees and costs; and (6) whatever other relief the Court deems necessary and proper. (Id. at pages 43-44.)

Defendants move to dismiss (ECF No. 13), under Fed. R. Civ. P. 12(b)(6)[7] on the basis that Doane's FAC is generally insufficient to put them on notice of Doane's claims against them, and his allegations are insufficient to satisfy the elements of each of his specific causes of action. (See ECF No. 13.) In addition, Defendants move to strike certain portions of Doane's complaint on the basis that they are "redundant, immaterial, impertinent or scandalous." (See MTS at pages 4-7.)

---

[7] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

6

**I.   MOTION TO DISMISS**

    **A.   Standard**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted). Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted). A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

///
///
///
///

Moreover, "Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009). If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680. A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of...the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992); Balistieri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

///

**ANALYSIS**

Doane's FAC asserts two claims under federal law and several claims under state law. The federal claims fail to state a facially plausible claim for relief and are therefore dismissed with final leave to amend. Because of this, the remaining state law claims are dismissed for lack of subject matter jurisdiction and the motion to strike parts of the record is denied as moot.

Before turning to the substance of Doane's federal claims, the Court first addresses the FAC's overall lack of adherence to the pleading standard set forth in Rule 8(a), as interpreted by Iqbal and Twombly. As the U.S. Supreme Court noted in Twombly, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

Here, Doane's forty-four page FAC is long on conclusory allegations and short on facts specific to this particular transaction and these particular parties. His Factual Allegations include pages of what appear to be boilerplate statements regarding the process of securitizing loans in the United States, the HAMP process, etc., but provide few details about his particular loan, his communications with Defendants, what exactly he alleges each individual Defendant did and when it did it. (See FAC, ¶¶ 19-122.)

As discussed above, Doane also includes facts that are not included in his Factual Allegations section throughout his causes of action, making it difficult to ascertain what the factual basis for any particular claim may be. As a general matter, this approach does not give Defendants, or the Court, fair notice of what Doane's claims are or the grounds upon which they rest. See Rule 8(a)(2). As has been noted before, "judges are not like pigs, hunting for truffles buried in briefs." <u>Guatay Christian Fellowship v. County of San Diego</u>, 670 F.3d 957, 987 (9th Cir. 2011).

Furthermore, some of Doane's claims appear to lack any factual basis at all. For example, Doane's conclusory allegation that the loan documents do not reflect the agreement of the parties, due to unspecified mistakes by the parties or due to unspecified fraud on Defendants' part, does not appear to have any factual support in his FAC. (FAC, ¶¶ 155-56). Similarly, his conclusory claims that unspecified Defendants "manufactured" documents, intentionally engaged in "bogus and fraudulent assignments," and engaged in "mail fraud" essentially state legal conclusions and lack sufficient factual detail for the Court (or Defendants) to determine what, exactly, Doane is alleging was done, by whom, when, how, and why.

As the Court noted in <u>Iqbal</u>, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. However, reciting a legal conclusion without providing supporting facts is simply insufficient to maintain a claim.

10

See Id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In sum, the Court concludes that the FAC generally fails to adhere to Rule 8(a)'s pleading standard.  Although the Court is dismissing the FAC with final leave to amend, Doane is on notice that any amended complaint must conform to Rule 8's pleading standard, as interpreted by the Supreme Court's decisions in Iqbal and Twombly.

**II. FEDERAL CLAIMS**

**A.   Securities and Tax Claims**

Doane's Seventh Claim for Relief is titled "Intentional Misrepresentation[;] Violation of the Federal Securities Laws...and U.S. Tax Code."  (FAC at page 30.)  Doane appears to contend that Defendants, by means of unspecified misrepresentations and/or omissions, purposely violated the Securities and Exchange Act, as well as the U.S. Tax Code, by intentionally failing to follow the proper process of securitizing his loan to qualify as a REMIC trust.  (FAC, ¶¶ 19-85, 189-204.)
///
///
///
///
///
///

11

Doane argues that these actions violate Section 10(b) and 10(b)-5 of the Securities and Exchange Act[8] and he asserts these actions also violate the "Step Transaction Doctrine,"[9] "which treats multiple transactions as a single integrated transaction for tax purposes if all of the elements of at least one of three tests are satisfied: (1) the end result test, (2) the interdependence test, or (3) the binding commitment test." Linton, 630 F.3d at 1224 (discussing each of the tests);(see also FAC at ¶¶ 204-212.)

Doane seeks to unwind the trustee's sale of the property by arguing that, by deliberately failing to properly follow the securitization process, the loan became part of an illegal security and therefore is both void and voidable. (Id. at ¶ 212.)  In essence, Doane is arguing that none of the Defendants had the authority to foreclose because their loan was improperly and illegally packaged and resold in the secondary market, where it was put into a trust pool and securitized.

///

///

---

[8] Section 10(b) of the Securities Exchange Act makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security...any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  SEC Rule 10b-5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 CFR § 240.10b-5(b).

[9] Doane provides no authority for the "Step Transaction Doctrine," but this doctrine was recently discussed by the Ninth Circuit in Linton v. U.S., 630 F.3d 1211, 1223-25 (9th Cir. 2011).

12

To state a claim for intentional misrepresentation, a plaintiff must plead "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (citation omitted).

Therefore, under Rule 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Rule 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba—Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).

Here, Doane's allegations are conclusory, convoluted, vague and generally fail to satisfy the pleading standards under Rule 8(a) or 9(b). Doane brings this claim against all Defendants and attributes every act against all Defendants. This fails the specificity requirement of Rule 9(b).

13

It is not clear what acts were done, by whom, to whom, or when these acts allegedly took place.  His factual allegations do not assist the Court to resolve the vagueness of his claims.  To cite just one example, the contention that "bogus and fraudulent assignments exist that have been executed by employees of Defendants, which assignments purport to transfer the beneficial interest in the mortgage, along with the note thereby secured" (FAC, ¶ 79) is a legal conclusion couched as a factual allegation and is insufficient to sustain his claim.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Doane generally alleges that several transfers and assignments took place and he contends that these transfers and assignments were fraudulent.  (See, e.g., FAC ¶¶ 67-85.)  However, it is not at all clear what, exactly, made these assignments and transfers "bogus and fraudulent."  (See FAC, ¶¶ 77, 79-80.)  Doane has not adequately explained how the activity of assigning mortgage loans to a trust pool gives rise to a fraud claim against any and all Defendants.

In addition, to prevail on his claim that Defendants made material misrepresentations or omissions in violation of § 10(b) and Rule 10b-5, Doane "must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"

///

14

1  Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1318
2  (2011) (quoting Stoneridge Investment Partners, LLC v.
3  Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008)).  Doane does
4  not directly address the elements of this claim, nor do his
5  conclusory Factual Allegations appear to support such a claim.
6  (See FAC, ¶¶ 67-85, 189-212.)
7       Conclusory allegations of "bogus and fraudulent" transfers
8  are insufficient to demonstrate a material omission or
9  misrepresentation or scienter on Defendants' part.  Exactly what
10 omissions or misrepresentations were made, by whom they were
11 made, and when they were made is not made clear in the FAC.  Nor
12 does Doane adequately describe how, exactly, he relied on these
13 alleged misrepresentations or omissions, or how, exactly, these
14 are tied to his particular loss.  Furthermore, Doane appears to
15 contend that Defendants intended to violate the securities laws
16 at the time of his loan origination (i.e., before
17 securitization), but these allegations are also unsupported.
18 (See FAC, ¶ 194.)
19      Further, Doane's "Step Doctrine" allegations merely recite
20 the elements of the doctrine and conclude by asserting Defendants
21 violated the doctrine.  (See FAC, ¶¶ 208-212).  This is
22 insufficient to state a claim under Rule 8(a).  See Iqbal,
23 556 U.S. at 678 ("Threadbare recitals of the elements of a cause
24 of action, supported by mere conclusory statements, do not
25 suffice.").
26      In sum, Doane's federal security and tax law claims fails to
27 satisfy the pleading requirements of either Rules 8(a) or 9(b).
28 Defendants' motion to dismiss the claim is therefore granted.

15

1  The Court will grant final leave to amend, but if Doane chooses
2  to assert these claims again, he is on notice that the Court will
3  expect his legal claims will be supported by specific factual
4  contentions (i.e., "'the who, what, when, where, and how' of the
5  misconduct charged." Vess v. Ciba—Geigy Corp. USA, 317 F.3d at
6  1106 (citation omitted)).  This, in turn, means that any amended
7  complaint shall comply with Rule 8(a)(2)'s "a short and plain
8  statement" requirement.  Lumping together claims for intentional
9  misrepresentation, federal securities law violations, and tax law
10 violations, without discussing the elements for each separate
11 cause of action, and relying on conclusory factual allegations in
12 support of these disparate claims, does not satisfy that
13 standard.
14     While it is conceivable that Doane may be able to state a
15 claim, at present his allegations are simply not plausible.  See
16 Twombly, 550 U.S. at 547 ("Because the plaintiffs here have not
17 nudged their claims across the line from conceivable to
18 plausible, their complaint must be dismissed.").  Defendants'
19 motion to dismiss this claim is granted with final leave to
20 amend.
21
22     **B.   RICO Claims**
23
24     For his RICO claim, Doane contends that all Defendants
25 engaged in a RICO enterprise by mailing him various mortgage
26 documents for the purpose of defrauding him of his property.
27 ((See FAC, ¶¶ 213-233.)
28 ///

16

"To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (en banc). A " 'pattern'...requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud. Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).

Rule 9(b) provides that "[i]n alleging fraud ..., a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." Consequently, "[t]he only aspects of wire [or mail] fraud that require particularized allegations are the factual circumstances of the fraud itself." Odom, 486 F.3d at 554.

Doane's conclusory allegations are insufficient to state a RICO claim under Rule 9(b). For the majority of the RICO claim elements, Doane simply lists each element and then alleges that all of the Defendants violated it without specifying what, exactly, Defendants did, which Defendants were involved, when the alleged actions occurred or anything else that might satisfy Rule 9(b)'s particularity requirement. (See FAC, ¶¶ 213-233.)

///
///
///

17

To the extent he alleges that Defendants engaged in mail fraud by mailing him the notice of default, notice of the trustee sale, and documents related to his loan modification, it is not at all clear why the mailing of these documents constituted mail fraud. (Id.)  Again, reciting the elements of a cause of action without providing factual support is insufficient to maintain a claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The RICO claim is dismissed with final leave to amend.

**C.   State Law Claims**

Having dismissed Doane's federal claims, the Court determines that the FAC fails to state any federal claims and therefore presents no basis for federal question jurisdiction or for diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.  The FAC alleges the following claims seeking relief under state law: declaratory relief; detrimental reliance; reformation of contract; promissory estoppel; misrepresentation; unfair business practices; intentional infliction of emotional distress; and negligent infliction of emotional distress.

///
///
///
///
///
///

18

Case 2:11-cv-02130-MCE-GGH   Document 22   Filed 06/12/12   Page 19 of 19

The Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c), and the state law claims are therefore dismissed as moot.[10]

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 13) is GRANTED with final leave to amend, the Request for Judicial Notice is GRANTED and the Motion to Strike (ECF No. 14) is DENIED as MOOT. Plaintiff shall not add any additional claims to any amended complaint and shall file any amended complaint not later than thirty (30) calendar days after this Order is filed electronically. If no such amended complaint is filed within said time period, this action will be dismissed with prejudice and without any further notice to the parties.

IT IS SO ORDERED.

Dated: June 11, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[10] However, were the Court to reach these claims, they would be dismissed on the basis of the factual inadequacies and conclusory allegations that riddle Doane's factual allegations and each of his causes of action. In the event that Doane intends to amend his complaint, he is on notice that failure to comply with the pleading standard set forth in Rule 8(a), as interpreted by the Supreme Court in Iqbal and Twombly, will result in dismissal of this action with prejudice.

19